Good morning, your honors. My name is Kelly Dove, and I represent the appellant Roy Allen O'Guinn. Mr. O'Guinn is a prisoner within the Nevada Department of Corrections facilities, and he is profoundly mentally ill. Indeed, he has a long documented history of serious mental illness. I saw the catalog of all of your claims, and I guess it sort of sprung to mind. What do you really want in this case for Mr. O'Guinn? I think Mr. O'Guinn is seeking damages under the ADA, but also prospective injunctive relief to ensure that he is treated appropriately for his mental illness, properly medicated going forward. And what do you mean in specific terms in that? As far as the prospective injunctive relief? Yes. I think that he's overseen by an appropriate mental health specialist, such as a psychiatrist, and medicated appropriately, because without medication and very consistent treatment, he clearly suffers quite a bit. I mean, his list of ailments is lengthy, as the record reflects. Indeed, I know that there really is no dispute on appeal that Mr. O'Guinn is mentally disabled. Probably linked somewhat to his being hit by a car in 1981. Found not even competent to stand trial at first in June 1999, which, as the score is well aware, is a very low bar. When he was intensively treated and then reevaluated several months later, barely crossed that hurdle. Two out of three doctors found that he was marginally competent to stand trial. So this is not a close case of somebody who might have a stealth mental illness that no one knows about. Indeed, he was incarcerated before. But yet, despite this history of mental illness, he received absolutely no mental health care from 2002 to 2006. He's in the mental health unit, discharged. The record's not really clear on exactly how that happened and the terms of his discharge. But from 2002 to 2006, he is unmedicated, untreated, not seeing any mental health professional at all. So why isn't that just medical negligence as opposed to a violation of the ADA? Yes, Your Honor. It's clear that under the general standards that the ADA nor the Eighth Amendment, which we don't bring an Eighth Amendment claim in this case, doesn't support a medical malpractice claim. But we submit that there's a difference between absolutely no treatment and medical malpractice. And even though we don't raise an Eighth Amendment claim, this is something that's discussed all the time in Eighth Amendment jurisprudence where, similarly, the Eighth Amendment doesn't support a medical malpractice claim or a claim of mere medical negligence. But there's line drawing that goes on between what constitutes mere medical negligence as opposed to the withhold or undue delay of mental health treatment. But under the Eighth Amendment, doesn't this, in the classic example, deliberate indifference to serious medical need? Our case? Yes. Yes. We would submit that it is and that there is a difference between the absolute withholding of treatment as opposed to receiving inadequate treatment, which is how the ---- Is he currently receiving adequate treatment or not? He is currently receiving some. To my knowledge, it's probably not as aggressive as what he needs. And it did ---- some mental health treatment did resume after the filing of his initial suit in 2006. After the suit was filed? Yes. So that may explain why today you can't bring an Eighth Amendment claim because he's getting some treatment. It's no longer a case of no treatment whatsoever. That may be true. And there might have been one originally, and I was not a part of this case at its inception. So, candidly, I can't answer why he didn't bring an Eighth Amendment claim to begin with. It wasn't your decision. Right. But I also ---- I don't see why he wouldn't have had one at the time, honestly. Okay. So ---- and all of the cases that are cited, especially in ---- well, in both briefs, but in NDOC's brief, are all examples of people who were being treated, but were being treated inadequately. And that's what we contend is not what happened here. In the Eighth Circuit, there was a diabetes management case where they contended that the management of this prisoner's diabetes was inadequate, the inadequate treatment of a broken leg in Fitzgerald. And then in Bryant v. Madigan, which this Court did recently cite, it's a Seventh Circuit case, the Court, again, noted that he wasn't really treated differently for being disabled and he was really just complaining about the adequacy of his mental treatment, I mean, medical treatment. But in all these cases, these people were under medical health care and receiving care from a doctor. Indeed, even in this Court's recent decision in Simmons, which was a 2010 decision, involved a prisoner who was being treated for depression and was on active suicide watch. So this man was being checked on every 30 minutes. He was being actively treated by a psychiatrist. Ultimately, unfortunately, committed suicide, but he was being actively treated throughout the entire length of his incarceration. And in a case like that, his parents brought suit because of his suicide, alleging that the care was inadequate. But that's a far cry from somebody who's being monitored and treated and worked with to somebody who's completely left to his own devices. And so I know this requires a little bit outside the record, but what treatment is he getting now specifically? You indicated he's getting Simmons. I believe he's just getting some lithium. Okay. Which is definitely better than nothing. But, again, I think the ADA cases that seem to be available are cases in which these prisoners have been treated, albeit perhaps treated inadequately. But I think the Eighth Amendment cases are at least instructive on what we can look at, that there is a difference between completely delayed or withheld medical care as opposed to medical care that's being provided but just is inadequate. And then further, I think that Endock makes much of the fact that Mr. O'Gwen has a lengthy disciplinary history in prison, no doubt. However, the source of that disciplinary history largely comes from his mental illness. And Endock wants to compare Mr. O'Gwen with a healthy, normal prisoner and say, well, yeah, he just wants a free pass. He's trying to use his disability as a way to get out of disciplinary segregation or any disciplinary consequences, and he's just looking for an out. And he really shouldn't be treated from anybody else differently from anybody else who has similar disciplinary problems. But the problem is that fails to take into account the fact that much of his acting out is a manifestation of his mental illness. And to take an analogy from the employment context. Let me ask you this. Sure. You have to show that he's otherwise qualified for whatever he's being denied in the employment context, I suppose. Correct. And here, if I understand correctly, and if I'm wrong, tell me, please. What he's being denied is being in general population. Is that correct? He's being placed in segregation. That's part of it. Presumably episodes of probably mania if it's a bipolar condition. That's right, Your Honor. I think we brought both under the theories he's being denied. How is he then otherwise qualified if he's exhibiting the symptoms and causing a disruption to be in population? For a couple reasons. First, we premised the claim on both his entitlement and qualification for mental health treatment services, which is a service he's being excluded from. But also, aside from general population, what goes along with that implicitly is the programs and activities that would normally be offered. And the qualified prong, as you point out, is linked to his disciplinary problems, like an employee's might be if they can't do their job. Which presumably are a consequence of his untreated medical condition. Right. And I think that's where the key is, because if Mr. Egwin were properly treated and medicated and still had disciplinary issues, we're not saying that he should not be disciplined for those issues or treated accordingly. But as it stands now or as it stood during the duration when he was not treated, because of the nature of his mental illness that largely caused him to act this way, he didn't stand a fighting chance to even be a part of the general population or act appropriately. So to hold him responsible for his own mental actions while he's in a state of untreated mental illness would go against this ADA and how you look at the manifestations of a disability being akin to discriminating against someone based on the disability itself. But there is a duty to protect others from harm, regardless of the cause of the harm, right? Right. So even if you say, well, he's got mental problems that cause him to be abusive and beat up other prisoners, you still have to protect the other prisoners. Sure. And we wouldn't contend that appropriate measures shouldn't be taken, just that he's entitled to be appropriately treated and medicated.  Meds and then the consequences flow from that where they may, right? That's right, because So let me ask you this. I'm going to ask this to the warden as well. It seems to me, I mean, we have a lot of really interesting legal issues here, but would the assistance of our mediation unit be of interest to you? It doesn't matter to us either way for our decision in terms of whether you're interested, but sometimes you look at a problem and you say, I'm not sure that the legal remedies fit the problem, and the problem seems to be you don't think your client's getting adequate medical treatment. They think he is, but that's something you could talk about. Yeah, and that might be an option that we'd consider, but I think that is the goal going forward. But I think that the legal question somewhat remains that there is a lack of law under the ADA in the context of prisons that really ties the standard of, okay, this does not give rise to a claim under medical malpractice, but there's another line to be drawn, too, that does give rise to a claim, and I think that's hinted at in United States v. Georgia, where the Supreme Court said that the same behavior can violate both Title II of the ADA and the Eighth Amendment. They're not necessarily mutually exclusive. No, this isn't a classic ADA case, though. I mean, I understand your theory on that, but as we would think about it, he's not being denied accommodations because he's, for example, in a wheelchair and so forth. I mean, it's a little more subtle than that. Right, because it is a mental health issue. I think it's not as obvious, and he's being denied sort of accommodations because he's acting out as a result of his mental health. And in the employment context, in the Humphrey v. Memorial Hospital Association case, an OCD-afflicted woman was having trouble getting to work on time consistently, and the court said for the purposes of the ADA, conduct resulting from a disability is considered part of the disability. So she could not properly, under the ADA, simply be terminated because she was chronically late or chronically absent, because that was a manifestation of her disease. It's hard to analogize from that strictly to being put in the general population of a prison, though. I mean, it is and it isn't, because someone with a mental illness like his, which includes psychosis and serious cognitive defects and antisocial disorders, I mean, his mental illness manifests itself in being antisocial and aggressive and perhaps assaulting other people. But to just segregate him without treating him is, I think, not a far throw from firing an employee for being late as a result of their disability as opposed to providing an accommodation. Was he able and did he request treatment? If you look at some of his writings and the kites in the record, I think he makes some circumspect requests at times. They're often not coherent. While we're not resurrecting the issue of the lower bunk, in his request for a lower bunk, he talks about his mental illness and that kind of thing. But we don't specifically hang our hat on the fact that he requested mental health treatment. But we would also contend that somebody with the seriousness of his mental illness cannot be expected to be their own steward of their mental health care. But if all that was happening is the custodial officials saw the behavior, were unaware of its underlying cause because there had been no sought and rejected medical treatment, nothing in his jacket or whatever to let them know that when this is going on, this is why, they're confronted with what they've got. I mean, I realize that it perhaps is too restrictive a view of what's going on. But nonetheless, you have to look at matters as they likely exist in prison. Sure. But his mental illness was well, well documented. Right. But you really can't expect somebody who has true psychosis is going to go out beating people. You can't put them in the general population. Well, no. But as far as the awareness of his mental illness, even though he might not have specifically alerted the prison custodians to that. But the ADA requires intent to discriminate, doesn't it? Essentially, yes. I think there's deliberate different language. Well, I think there's a deliberate indifference standard there. And combined with his documented history that was available to the prison officials and custodians, along with the prison's own policies, which when prisoners are placed in disciplinary settings,     They're not allowed to be in those settings. If they encounter segregation and encounter other problems under the prison's own policies, they're supposed to subject that inmate to a mental health evaluation. And that's in the record as well. There are policies. So by failing to do that, that I believe satisfies that standard. And I know I'm out of time. Questions? Thank you very much for your argument. Thank you. Good afternoon, Your Honors. Clark Leslie appearing on behalf of the Nevada Department of Corrections. Good morning. Your Honor, Your Honors, very simply, we're here to urge that this Court follow the holdings of the ADA in relation to medical claims by inmates as have been followed in the Seventh, the Eighth, the Tenth, the Eleventh, and the Second Circuits. In Troussant and Grisant, Simmons, Bryant, Berger, Schiavo, Fitzgerald, and Grisant, those courts have unanimously held that we should not convert medical claims that are made by inmates such that they can be brought into the ADA. And there are many, I think, good policy reasons for that. Your Honor, Judge Carr, you mentioned about whether or not there would or would not be available an Eighth Amendment claim. There is and there would be. The phrase deliberate indifference came up throughout the course of my esteemed colleague's argument, and that's a point well taken. It has been said that no treatment is simply the extreme version of incomplete or inadequate treatment, and that might be the case here. However, this is not amenable to an ADA type of claim. We are not talking about discrimination. We are talking about an individual who is claiming that his medical treatment is inadequate or incomplete or does not properly address his medical or mental condition. If that is the case, then the classic paradigm under which these claims are presented to the Court is by and through the Eighth Amendment, deliberate indifference. What we do see and what Magistrate Cook, I think, stated so very well in her order is our courts have labored for decades to avoid a circumstance where there is a Federal cause of action for medical malpractice. We have the Eighth Amendment, and we have been assaulted through various means, the ADA, the RA, and other matters to try to get to that point. You mentioned mediation. We are always open to that. We would be amenable to discussing the treatment of Mr. O'Gwen with counsel to determine whether or not. The reason I raise it, and obviously you both have very excellent legal points, but you're going to be dealing with Mr. O'Gwen for some time, and if he takes your invitation and files an Eighth Amendment suit, you're back here. If he files a State malpractice suit, you've got to resolve that. And the basic, you know, it may be it's unresolvable given the nature of the differences, but if we're talking about treatment, that's what he needs. And to keep him nonviolent, that's what you want to. But you take that up if you want. I know you're both amenable, but it's and we'll have no part of our decision, but I just suggest that. Anyway, if there are no questions, I would submit. And if you would like the assistance of the Mediation Unit, which is very effective, it's ready and available. I've dealt with Roxanne. She's outstanding. And so thank you, Your Honor.  Thank you. Thank you both for your arguments. The case will be submitted for decision and there will be an adjournment for the morning. And now I can stand. Yes, sir. All rise.
judges: Carr, Thomas, Clifton